Filed 5/27/22  P. v. Buford CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C093285 |
| Plaintiff and Respondent, | (Super. Ct. No. 05F00798) |
| v. | |
| TERRY BUFORD, | |
| Defendant and Appellant. | |

In 2020, following the passage of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437), defendant Terry Buford filed a petition pursuant to Penal Code section 1170.95 to be resentenced on his conviction of attempted murder.[1]  The trial court denied the petition at the prima facie stage without issuing an order to show cause, concluding defendant was ineligible for resentencing because he was convicted of

---

[1]    Undesignated statutory references are to the Penal Code.

1

attempted murder rather than murder. The court also concluded defendant was ineligible because, in finding him guilty of conspiracy to commit murder, the jury necessarily determined he had the intent to kill. Finally, the court rejected defendant's equal protection claim. Defendant appeals, asserting the trial court's determinations were erroneous. After the matter was fully briefed, we ordered supplemental briefing on the impact, if any, of Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775) on defendant's appeal.

We affirm. Following enactment of Senate Bill 775, it is clear defendant is not precluded from section 1170.95 relief based solely on the fact that he was convicted of attempted murder rather than murder. However, the jury's verdicts and findings irrefutably establish defendant acted with the intent to kill. As such, he is ineligible for Senate Bill 1437 relief as a matter of law.

## BACKGROUND

In 2004, defendant and three codefendants beat, robbed, and kidnapped defendant's former girlfriend who was seven months pregnant with defendant's child. (*People v. Curry* (2007) 158 Cal.App.4th 766, 771-772 (*Curry*).) In an amended information, defendant and three codefendants were charged with willful, deliberate, and premeditated attempted murder of a human fetus (§§ 664, 187, subd. (a); count one), assault with a deadly weapon (§ 245, subd. (a)(1); count two), robbery in the second degree (§ 211; count three), kidnapping to commit robbery (§ 209, subd. (b)(1); count four), attempted second degree robbery (§§ 664, 211; count five), and conspiracy to commit murder of a human fetus (§ 182, subd. (a)(1); count six). A jury found defendant guilty on all counts and found true, among other things, a special finding allegation that the attempted murder was committed willfully, deliberately, and with premeditation. The trial court sentenced defendant to 25 years to life on count six, conspiracy to commit murder; life with the possibility of parole on count four, kidnapping to commit robbery; and the upper term of five years on count three, robbery. The trial court also imposed life

2

with the possibility of parole on count one, attempted murder, as well as terms on counts two and five, with execution of these sentences stayed pursuant to section 654. Another panel of this court affirmed the judgment. (*Curry, supra*, 158 Cal.App.4th 766.)

On January 24, 2020, defendant filed a petition for resentencing pursuant to section 1170.95. In his form petition, defendant checked boxes indicating he had been convicted of first or second degree murder under the felony-murder rule or the natural and probable consequences doctrine, and that he could not now be convicted of those offenses due to changes made to sections 188 and 189. Defendant also asserted he had been convicted of first degree felony murder and could no longer be convicted of that offense due to changes made to section 189 because he was not the actual killer and he did not, with the intent to kill, aid or abet the actual killer in the commission of murder in the first degree. The trial court appointed counsel.

The People responded defendant was not eligible for resentencing as a matter of law because section 1170.95 applied exclusively to murder convictions and defendant was convicted of attempted murder. The People further asserted defendant's petition should be denied because his conviction of conspiracy to commit murder necessarily established "it has already been found proven beyond a reasonable doubt that defendant harbored express malice which renders him ineligible for relief as a matter of law."

In a written ruling, the trial court concluded defendant failed to make a prima facie showing. The court concluded that, under then-applicable case law, section 1170.95 resentencing was limited to convictions for murder, and those, like defendant, convicted of attempted murder were ineligible. As a separate and independent ground for its ruling, the court noted that, in finding him guilty of conspiracy to commit murder, the jury found defendant had the intent to kill. Defendant's intent to kill rendered him ineligible for relief under Senate Bill 1437. Thus, the trial court concluded defendant failed, as a matter of law, to make a prima facie showing. The court denied the petition and did not issue an order to show cause.

3

## DISCUSSION

### I

#### *Eligibility for Section 1170.95 Relief*

"Murder is the unlawful killing of a human being, or a fetus, with malice aforethought." (§ 187, subd. (a).) "For purposes of Section 187, malice may be express or implied." (§ 188, subd. (a).) Prior to the enactment of Senate Bill 1437, "the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense." (*People v. Lamoureux* (2019) 42 Cal.App.5th 241, 248.)

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective January 1, 2019. Senate Bill 1437 was enacted "to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Senate Bill 1437 achieved this by amending sections 188 and 189.

Subdivision (a)(1) of section 188 defines express malice and subdivision (a)(2) defines implied malice. Following enactment of Senate Bill 1437, subdivision (a)(3) of section 188 now provides: "Except as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." Thus, following enactment of Senate Bill 1437, and where the felony-murder rule is not at issue, a person must act with malice to be convicted of murder. (§ 188, subd. (a)(3); see *In re R.G.* (2019) 35 Cal.App.5th 141, 144.)

4

Relevant to felony murder, section 189, subdivision (e) now provides: "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) [(defining first degree murder)] in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

In addition to amending sections 188 and 189, Senate Bill 1437 also authorized, through newly enacted section 1170.95, an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and to be resentenced on any remaining counts if he or she could not have been convicted of murder because of Senate Bill 1437's changes to sections 188 or 189. (See *People v. Lewis* (2021) 11 Cal.5th 952, 959 (*Lewis*).)

Upon the submission of a section 1170.95 petition, and following briefing by the parties, the court shall "determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c).)[2] "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Ibid*.)

---

[2]     Senate Bill 775 amended subdivision (c) of section 1170.95 to provide that, following briefing by the parties, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief." (§ 1170.95, subd. (c), as amended by Stats. 2021, ch. 551, § 2, eff. Jan. 1, 2022.) That subdivision also now provides that, "[i]f the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (*Ibid*.)
       As stated *ante*, we ordered supplemental briefing on "the impact, if any, of the enactment of Senate Bill No. 775 on defendant's appeal." Although defendant asserts in

5

In order to determine whether the petitioner has made the requisite prima facie showing, the trial court may examine the petitioner's record of conviction. (*Lewis, supra*, 11 Cal.5th at pp. 970-971.) "Appellate opinions . . . are generally considered to be part of the record of conviction." (*Id*. at p. 972.) Jury instructions also may be considered as part of the record of conviction. (*People v. Gomez* (2020) 52 Cal.App.5th 1, 16, review granted Oct. 14, 2020, S264033; see *People v. Jenkins* (2021) 70 Cal.App.5th 924, 935.)

At the prima facie stage, "a petitioner's allegations should be accepted as true, and the court should not make credibility determinations or engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Lewis, supra*, 11 Cal.5th at p. 974.) However, if the record of conviction establishes the petition lacks merit as a matter of law, the trial court may deny the petition without conducting further proceedings. (See *id*. at p. 971 [the "record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless"].)

In his original briefing, defendant asserts the trial court erred in determining Senate Bill 1437 does not apply to attempted murder convictions. Prior to the enactment of Senate Bill 775, the Courts of Appeal were split on whether Senate Bill 1437 applied to attempted murder convictions. On January 1, 2022, Senate Bill 775 became effective, resolving this conflict. Senate Bill 775 "[c]larifies that persons who were convicted of attempted murder or manslaughter under a theory of felony murder and the natural probable consequences doctrine are permitted the same relief as those persons convicted

his supplemental briefing on Senate Bill 775 that he is entitled to reversal, issuance of an order to show cause, and an *evidentiary* hearing under section 1170.95, subdivision (d), he has not raised the trial court's failure to hold a *prima facie* hearing pursuant to section 1170.95, subdivision (c) as a claim or error. In light of our ultimate determinations, and the scope and limited nature of the prima facie hearing, any such error would be harmless under any standard. Additionally, the trial court did "provide a statement fully setting forth its reasons for" declining to issue an order to show cause. (§ 1170.95, subd. (c).)

of murder under the same theories." (Stats. 2021, ch. 551, § 1, subd. (a).) The changes effected by Senate Bill 775 apply to acts predating its enactment as either an ameliorative statute under *In re Estrada* (1965) 63 Cal.2d 740, 748, or a clarification of law (*Western Security Bank v. Superior Court* (1997) 15 Cal.4th 232, 243-244; *People v. Lee* (2018) 24 Cal.App.5th 50, 57). Under either theory, defendant is entitled to attempt to avail himself of the benefits of the provisions of section 1170.95. Thus, the first ground for the trial court's ruling—Senate Bill 1437 did not apply to attempted murder convictions—is no longer tenable following enactment of Senate Bill 775.

The trial court alternatively denied defendant's petition on the ground that, in finding defendant guilty of conspiracy to commit murder, the jury concluded, beyond a reasonable doubt, that defendant had the intent to kill and his intent to kill rendered him ineligible for relief under Senate Bill 1437.

The record of conviction establishes defendant was convicted of conspiracy to commit murder of a human fetus as charged in count six. (§ 182, subd. (a)(1).) As defendant's jury was instructed, to find him guilty on that count the jury was required to find, among other things, that defendant "intended to agree and did agree with one or more of the other defendants or [a testifying witness] to commit murder" and that "[a]t the time of the agreement, the defendant and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder." (CALCRIM No. 563.) Thus, the jury necessarily found defendant "intended to agree and did agree . . . to commit murder" and, at the time of the agreement, defendant intended that one or more of the coconspirators would commit murder. (*Ibid.*) Based on his conviction of conspiracy to commit murder, the record of conviction establishes, beyond a reasonable doubt, defendant had the intent that a coconspirator would commit murder. As such, as a matter of law, he cannot demonstrate that, as a result of changes to section 188 or 189 effected by Senate Bill 1437, he could no longer be convicted of attempted murder. (See § 1170.95, subd. (a)(3); see also §§ 188, subd. (a)(1), (3), 189, subd. (e)(2).)

7

Defendant relies on the fact that the jury was instructed on the natural and probable consequences doctrine as part of the instruction on liability for coconspirators' acts. (CALCRIM No. 417.) He asserts that, under Senate Bill 1437, "imputing malice to [him] based on aiding/abetting and conspiracy theories grounded in the natural and probable consequences doctrine cannot stand." However, defendant omits the fact that, to find him guilty of conspiracy to commit murder on count six, the jury necessarily found, beyond a reasonable doubt, he agreed with one or more coconspirators to commit murder and that he and one or more coconspirators intended that one or more of them would commit murder. (CALCRIM No. 563.) As another panel of this court stated on defendant's original appeal, discussing a contention raised by codefendant Russell, "[i]n finding Russell guilty of conspiracy to commit murder, the jury necessarily found that she premeditated and deliberated the murder of" the unborn fetus. (*Curry, supra*, 158 Cal.App.4th at p. 792, citing *People v. Cortez* (1998) 18 Cal.4th 1223, 1232 ["The mental state required for conviction of *conspiracy* to commit murder necessarily establishes premeditation and deliberation of the target offense of murder"].)

Although the trial court did not make this observation, the record of conviction also establishes defendant's intent to kill based on the jury's true finding on the special allegation that the attempted murder charged in count one was committed willfully, deliberately, and with premeditation within the meaning of section 664, subdivision (a). (See generally *People v. Zapien* (1993) 4 Cal.4th 929, 976 [" '[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion.' "].) The trial court instructed the jury with regard to this special allegation: "The special finding of premeditation and deliberation may be found true where a principal attempted a willful, deliberate, and premeditated murder even though the aider/abettor did not personally deliberate or premediate. *The aider/abettor must still*

8

*share the intent to kill*." (Italics added.) The jury's true finding on this special allegation necessarily included the finding, beyond a reasonable doubt, that defendant "share[d] the intent to kill."

Discussing this instruction, defendant asserts that the premise that the jury necessarily found he had the intent to kill is "unsupported" based on the first sentence of the instruction and because "the jury was instructed on the natural and probable consequences theory and there is no showing that the jury did not rely on this theory." In making this argument, however, defendant overlooks the fact that, based on the second sentence of the instruction, the jury necessarily found, beyond a reasonable doubt, defendant "share[d] the intent to kill." Whether or not the first sentence would be a lawful basis for a finding of willful, deliberate, and premeditated attempted murder now, it is ineluctable that, based on the second sentence, the jury found defendant shared the intent to kill. As another panel of this court stated on defendant's original appeal, addressing another of codefendant Russell's contentions: "To find an aider and abettor criminally liable for premeditated attempted murder, the jury must find that the defendant 'share[d] the intent to kill.' A jury could not make a true finding on the special allegation on premeditation if it determined that Russell only intended to aid and abet a perpetrator in felony assault without harboring the intent to kill" the unborn fetus. (*Curry, supra*, 158 Cal.App.4th at p. 791.)

Based on the verdict form, defendant also asserts in supplemental briefing the "jury was never asked to render a separate verdict on the underlying offense" of attempted murder "and then, separately, to consider the special finding." He further asserts that, based on the wording of the verdict form, "the jury was never informed that it was deciding two separate issues, i.e.,[] whether [defendant] was guilty of attempted murder and whether the defendant in attempting murder, was acting willfully, deliberately and with premeditation. As a result, it is impossible to determine if the jury was simply repeating in the special finding the issue it believed it had decided in count

9

one, or whether it understood it was deciding a separate, more serious element." Defendant's contention is belied by the plain language of the verdict form. After setting forth a guilty verdict on count one, attempted murder (§§ 664, 187, subd. (a)), the verdict form, as completed, stated, under the separate heading "SPECIAL FINDING": "We, the jury, *further find* that the aforesaid attempted murder was committed willfully, deliberately and with premeditation within the meaning of . . . Section 664(a) to be" true. (Italics added.) The trial court furnished the jury with the special allegation instruction, informing the jurors what they were required to find to support the special allegation. The jury clearly found that defendant was guilty of attempted murder and, additionally, that the murder was committed willfully, deliberately, and with premeditation. And, again, that instruction specifically required the jury to find that, as an aider and abettor, defendant "must still share the intent to kill."

Defendant also asserts the jury was misinstructed with CALCRIM No. 252 in connection with the specific intent to kill and that this affected the jury's determinations as to both the conspiracy count and the special allegation. However, defendant raises this argument for the first time in his supplemental reply brief. " 'Obvious considerations of fairness in argument demand that the appellant present all . . . points in the opening brief. To withhold a point until the closing brief would deprive the respondent of [the] opportunity to answer it or require the effort and delay of an additional brief by permission. Hence the rule is that points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before.' " (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764, quoting *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 335, fn. 8; accord, *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)

Defendant's record of conviction establishes he had the intent to kill. As a matter of law, defendant cannot establish that malice was imputed to him "based solely on his . . . participation in a crime" (§ 188, subd. (a)(3)); his jury necessarily found, beyond a

10

reasonable doubt, that he harbored the intent to kill.  Additionally, based on the jury's necessary finding that he had the intent to kill, as a matter of law defendant cannot establish that he could not be convicted based on changes to section 189.  (See § 189, subd. (e)(2) [a participant in the perpetration or attempted perpetration of a felony listed in § 189, subd. (a), in which a death occurs, is liable for murder if, among other possibilities, "*with the intent to kill*, [he] aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree" (italics added)].)  Defendant's intent to kill appearing in the record of conviction establishes he cannot, as a matter of law, demonstrate he "could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."  (§ 1170.95, subd. (a)(3).)  Thus, he cannot make the requisite prima facie showing that he is entitled to relief under section 1170.95.  (See § 1170.95, subd. (c).)  Because the record of conviction demonstrates defendant is ineligible for section 1170.95 relief as a matter of law, the trial court did not err in denying his petition.

## II

### *Equal Protection*

Defendant asserts those convicted of attempted murder are denied equal protection of the law if not deemed entitled to be considered for Senate Bill 1437 relief.  Senate Bill 775 has rendered this contention moot.

DISPOSITION

The order denying defendant's petition for resentencing under section 1170.95 is affirmed.

/s/
RAYE, P. J.

We concur:

/s/
ROBIE, J.

/s/
HOCH, J.

12